JOHN W. HUBER, United States Attorney (#7226)
J. DREW YEATES, Assistant United States Attorney (#9811)
ROSE E. GIBSON, Trial Attorney United States Department of Justice
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:17-CR-00527 |
| Plaintiff, | : | |
| vs. | : | **MEMORANDUM IN SUPPORT OF DEFENDANT'S DETENTION PENDING TRIAL** |
| MARK OLIC PORTER, | : | Judge Dee Benson |
| Defendant. | : | Magistrate Judge Brooke C. Wells |

---

The United States of America, by and through its undersigned counsel, submits this Memorandum in Support of Defendant's Detention Pending Trial.

## BACKGROUND

Defendant is charged by indictment with violating the civil rights of M.W. More specifically, Defendant is charged with interfering with M.W.'s housing rights by intimidating and injuring M.W. with a stun cane because of M.W's race and color. The United States moved for Defendant's detention at a hearing before Magistrate Judge Dustin Pead on October 11, 2017. A detention hearing is scheduled for October 17, 2017, before Magistrate Judge Brooke Wells.

<u>FACTUAL SUMMARY</u>

Defendant, a white male, moved into the Adagio Apartments in Draper, Utah in November of 2015. When Defendant applied to rent an apartment at the Adagio complex, he asked the leasing agent, also a white male, whether any "blacks" lived in the apartment community. Months later, when the apartment above Defendant's became vacant, Defendant asked the maintenance workers – all of whom are white – not to move any "niggers" into the apartment above him. In early 2016, Defendant told two white maintenance workers at the apartment complex that he had re-written Dr. Martin Luther King, Jr.'s "I Have a Dream" speech. Defendant announced that his dream was that "all the niggers would be dead."

On November 3, 2016, Defendant approached his neighbor as she was returning home from work. Defendant began to rant about black people. Defendant told his neighbor that he wanted to "exterminate all the niggers." Defendant said that before exterminating all the "niggers" he would need to "exterminate all the nigger lovers." As Defendant was making these comments, his neighbor noticed a small African-American child (later identified as seven year-old L.W.) riding his scooter around the sidewalk. As the boy would get closer, Defendant would become louder. The neighbor fled indoors fearing that something bad was going to happen. The neighbor heard Defendant continue to yell. Defendant yelled at the child, "Get out of here, nigger!"

M.W., the father of seven year-old L.W., heard Defendant yelling at his son, and he went outside to bring his son inside. As M.W. walked outside he could still hear Defendant shouting, "fucking niggers," but he could not see Defendant. M.W. walked over to Defendant's porch area and saw that Defendant was concealing an object behind his back. M.W. said, "Please don't speak that way in front of my son." Defendant yelled, "You and

your nigger son can get out of here." As Defendant said this, he swung a one-million volt stun cane over his balcony and struck M.W. in the neck. M.W. suffered pain and burning from the shock, but was able to grab the cane as he fell to the ground. M.W. got up and walked away to called police. As M.W. and L.W. retreated to their apartment, Defendant continued to call M.W. a "nigger." M.W. called the police at approximately 6:04 p.m.

Defendant fled the scene in his car prior to police arriving on scene. Defendant eventually returned to the Adagio apartments. Defendant called 911 at 6:24 p.m. Defendant told the 911 operator that a kid was making faces at him. Defendant said he told the kid to stay away and then the kid's father came over and "came at [him]." Defendant said he "zapped" the father. However, Defendant later denied using the cane against M.W. Defendant said that his cane had been stolen and that he wanted it returned. Defendant's wife, Reyin Porter, told police that a kid was making faces and said that her husband was "defending" and using a "toy" Taser.

After interviewing M.W., Defendant, and various witnesses, officers attempted to arrest Defendant but Defendant resisted. Defendant yelled at police telling them they were "nigger lovers." Defendant was charged in the state of Utah but those charges were later dismissed in favor of federal prosecution. Defendant's lawyer in the state case was aware of the impending federal indictment. However, prior to indictment, Defendant left the state of Utah and moved to Arizona.

On September 13, 2017, Defendant was indicted by the grand jury and an arrest warrant was issued. On September 14, 2017, Defendant was arrested by federal agents in Arizona. Without provocation, Defendant made numerous racist statements about African Americans to the federal agents, such as "Real white men should kill niggers," "Tell them

not to put me in a cell with a nigger, I might have to kill him when he's sleeping," and "Niggers are not even human."

ARGUMENT

The following § 3142(g) factors weigh heavily in favor of Defendant's continued detention:

A.  <u>Nature and Circumstance of the Offense</u>.

A violation of a person's civil rights is a particularly serious offense. The gravity of a civil rights violation is magnified, in cases such as this, where a dangerous weapon is used, a victim is injured, and a child is victimized and traumatized. The magnitude of a civil rights violation intensifies further still, in cases such as this, where the perpetrator has a history of hate-motivated violence. The Court should find that the nature and circumstances of the case weigh heavily in favor of detention.

B.  <u>Weight of the Evidence</u>.

Defendant's hostility toward the African Americans community is incontrovertible. Defendant's intent to interfere with the housing of African Americans at the Adagio apartment's is established through Defendant's own statements to the Adagio apartment leasing agent, the Adagio apartment maintenance workers, Defendant's neighbor at the Adagio apartments, and Defendant's bigoted statements to L.W. and M.W. The Court should find that the weight of the evidence weighs heavily in favor of detention.

C.  <u>Defendant's History and Characteristics</u>.

The following list of facts support an order of detention:

- Defendant has been unemployed for 33 years.

- Defendant has repeatedly displayed anger and rage.

- Defendant has a history of physical and verbal aggression.

- Defendant has few, if any, ties to our community.

- Defendant has few ties to the community in Arizona where he resides.

- Defendant is a drifter.

- Defendant committed the instant offense while criminal charges were pending in Idaho.

- Defendant left the state of Utah knowing that a federal indictment was forthcoming.

- Defendant has a long and grim criminal history.

Defendant's history and characterizes support a detention order, but Defendant's criminal history merits additional scrutiny. As indicated in the pre-trial services report, Defendant has been involved in the criminal justice system repeatedly over the course of five decades and in at least six states. Troublingly, many of Defendant's crimes are violent in nature.

- At age 56, in Idaho, Defendant was charged with **battery**, disturbing the peace, vandalism, and driving under the influence. Investigation by the FBI suggests this was a hate-motivated crime perpetrated against a Caucasian woman that held African culture in high esteem. **An arrest warrant remains outstanding.**

- At age 45, in Nevada, Defendant was convicted at trial of **assault**, **battery**, and **throwing a deadly missile** and was subsequently sentenced to serve three

concurrent 15-day jail terms. Investigation by the FBI suggests his was a hate crime perpetrated against an African American woman.

- At age 39, in New York, Defendant was charged with **aggravated harassment**, though the final disposition of the case is currently unknown.

- At age 35, in New York, Defendant was sentenced to serve 15 months in prison for **assault causing serious physical injury**.

- At age 32, in Nevada, Defendant was convicted at trial of misdemeanor **battery** and trespassing.

- At age 29, in New York, Defendant was charged with felony **bail jumping**, though the final disposition of the case is currently unknown.

- At age 26, in South Carolina, Defendant served 5 days in jail for disorderly conduct.

- At age 19, in Michigan, Defendant served five months in prison after pleading guilty to fraudulent procurement of narcotics in return for the state dismissing charges involving **felony assault**, **assault with a dangerous weapon**, and dangerous drugs.

Defendant's history is deplorable and his characteristics are appalling. Accordingly, the Court should find that Defendant's history and characteristics weigh heavily favor detention.

    D.  <u>Nature and Seriousness of Danger to Community</u>.

As set forth more fully above, the combination of Defendant's racial animus and propensity for violence render Defendant a serious danger to the community. Defendant's

decades long history of victimizing through assault and battery show he presents a danger to the community. This factor, again, weighs in favor of detention.

CONCLUSION

There are no conditions or combination of conditions that would reasonably assure the safety of the community were Defendant released. Defendant also presents an unmanageable risk of non-appearance. Therefore, the Defendant should be detained pending trial.

RESPECTFULLY SUBMITTED October 15, 2017.

JOHN W. HUBER
United States Attorney

/s/ J. Drew Yeates
J. DREW YEATES
Assistant United States Attorney

/s/ Rose E. Gibson
ROSE E. GIBSON
Trial Attorney, Department of Justice