JOHN W. HUBER, United States Attorney (#7226)
J. DREW YEATES, Assistant United States Attorney (#9811)
ROSE E. GIBSON, Trial Attorney United States Department of Justice
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:17-CR-00527 |
| Plaintiff, | : | |
| vs. | : | **NOTICE OF INTENT TO OFFER EVIDENCE OF UNCHARGED CONDUCT** |
| MARK OLIC PORTER, | : | |
| | | Judge Dee Benson |
| Defendant. | : | Magistrate Judge Brooke C. Wells |

The United States, by and through its undersigned representatives, hereby provides notice of its intent, pursuant to Fed. R. Evid. 404(b), to introduce at trial evidence of two extrinsic acts committed by the defendant, Mark Porter. This defendant has, on two prior occasions, engaged in unprovoked assaults against individuals whom he identified as African-American or who showed an affinity for African-Americans. This evidence is probative of the defendant's state of mind during the commission of the instant offense (an alleged hate crime), and is specifically relevant to an element the government is required to prove in this case—that the defendant was motivated by racial animus. Accordingly, the United States submits that this evidence should be admitted pursuant to Fed. R. Evid.

404(b).

I.     BACKGROUND

Defendant, a white male, moved into the Adagio Apartments in Draper, Utah in November of 2015. When Porter applied to rent an apartment at the Adagio complex, he asked the leasing agent, also a white male, whether any "blacks" lived in the apartment community. Months later, when the apartment above Defendant's became vacant, Defendant asked the maintenance workers – all of whom are white – not to move any "niggers" into the apartment above him. In early 2016, Defendant told two white maintenance workers at the apartment complex that he had re-written Dr. Martin Luther King, Jr.'s "I Have a Dream" speech. Defendant recited his revised speech, including his dream that "all the niggers would be dead."

On November 3, 2016, Defendant approached his neighbor as she was returning home from work. Defendant began to rant about black people. Defendant told his neighbor that he wanted to "exterminate all the niggers." Defendant said that before exterminating all the "niggers" he would need to "exterminate all the nigger lovers." As Defendant was making these comments, his neighbor noticed a small African-American child (later identified as seven year-old L.W.) riding his scooter around the sidewalk. As the boy drew closer, Defendant became louder. The neighbor fled indoors, fearing that something bad was going to happen. The neighbor heard Defendant continue to yell. Defendant yelled at the child, "Get out of here, nigger!"

Mike Waldvogel, the father of seven year-old L.W., heard Defendant yelling at his son, and he went outside to bring his son inside. As Waldvogel walked outside he could still

hear Defendant shouting, "fucking niggers," but he could not see Defendant. Waldvogel walked over to Defendant's porch area and saw that Defendant was concealing an object behind his back. Waldvogel said, "Please don't speak that way in front of my son." Defendant yelled, "You and your nigger son can get out of here." As Defendant said this, he swung a stun cane over his balcony and struck Waldvogel in the neck. Waldvogel suffered pain and burning from the shock, but was able to grab the cane as he fell to the ground. Waldvogel got up and walked away and called police. As Waldvogel and L.W. retreated to their apartment, Defendant continued to call Waldvogel a "nigger."

After interviewing Waldvogel., Defendant, and various witnesses, officers attempted to arrest Defendant but Defendant resisted. Defendant yelled at police, telling them they were "nigger lovers." On September 13, 2017, Defendant was indicted on a federal hate crime charge.

II.     Extrinsic Act Evidence

The United States seeks to introduce evidence at trial related to two other incidents where Defendant engaged in racially-motivated violence.  We intend to offer this evidence in order to prove Defendant's intent and motive to commit the charged offense, and to establish Defendant did not assault the victim by mistake.  The evidence also will establish an element of the charged offense.

In the first incident, in 2006, Defendant threw rocks at an African-American woman while calling her a "nigger."  The victim, Tammie Jolema Luca, will testify that in 2006 she was working at a store in Las Vegas, Nevada when Porter came into the location to conduct business.  Luca turned Porter away because the store was closed.  Later that evening, as Luca was leaving to go home, she saw Porter waiting outside the business.  Defendant shouted at

Luca, and called her a "nigger" as he threw rocks at her. Defendant was charged in state court and convicted of Battery, Assault, and Throwing a Deadly Missile.

Next, in 2015, Defendant assaulted Kailey Salzwedel at a store in Idaho Falls, Idaho in part because she had expressed an affinity for African culture. Salzwedel would testify that, prior to the assault, Porter had questioned Salzwedel about her nose ring. When Salzwedel told Defendant that the nose ring was related to African culture, Defendant responded by telling her that "everything bad comes from Africa." Later, a co-worker told Salzwedel that Porter had come into the store and referred to Salzwedel as a "nigger lover." In the wake of these comments, Defendant was told that he could no longer come to the store. Despite this, Porter returned to the store. Salzwedel asked Defendant to leave. Defendant responded by punching Salzwedel several times in the face and head. After the assault, Defendant said, "Don't ever talk to a white man like that." Defendant was charged in state court with assault. There is an outstanding warrant for his arrest.

III. The Legal Standard

Rule 404(b) provides that other act evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Tenth Circuit has adopted a four-part inquiry regarding the admission of evidence pursuant to Rule 404(b): "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *United States v. Cardinas Garcia*, 596 F.3d 788, 797 (10th Cir. 2010) (citations and quotations omitted). The Tenth Circuit further explained

that "[t]o determine relevance under Rule 404(b), we must examine factors such as the similarity of the uncharged act to the charged conduct." *Id.* 97-98.

Rule 404(b), as it applies to evidence related to the defendant's state of mind, is a rule of inclusion, rather than exclusion. *United States v. Powers,* 59 F.3d 1460, 1464 (4th Cir. 1995) (characterizing 404(b) as an "inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition"); *see also United States v. Jewell*, 614 F.3d 911, 922 (8th Cir. 2010); *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010).

In the Tenth Circuit, "[I]f the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *United States v. Davis,* 636 F.3d 1281, 1298 (10th Cir. 2011). Evidence is relevant if it has *any* tendency to make the existence of any determinative fact more probable that it would be absent the evidence. Fed. R. Evid. 401.

In the Tenth Circuit, courts have allowed evidence of prior acts related to racial animus when racial motivation is an element of the crime charged. *United States v. Woodlee*, 136 F.3d 1399, 1410 (10th Cir. 1998). S*ee also United States v. Franklin,* 704 F.2d 1183, 1188 (10th Cir. 1983) (allowing admission of prior acts to prove racial animus, even where defendant did not deny racism, because "racial motive was still an element of the crime that the government had to prove").

In *United States v. Franklin*, defendant Franklin was convicted, in the District of Utah, of killing two black men whom Franklin had observed running in a public park in the

5

company of two white women. Franklin was convicted under 18 U.S.C. § 245(b)(2)(B), which required the government to prove that the defendant acted because of the victim's race, color, or national origin.[1]

At trial, the government presented evidence that Franklin had assaulted an interracial couple in Washington, D.C. four years prior to the killing of the two men in Utah. On appeal, Franklin challenged the admission of this evidence. First, Franklin challenged the evidence of the D.C. assault because the government had already offered an abundance of other evidence of Franklin's racial animus.[2] Second, Franklin argued that the D.C. assault was too remote in time from the charged offense. The Court of Appeals rejected the defendant's arguments and upheld the trial court's determination that the evidence was relevant, probative, and not unduly prejudicial.

In *United States v. Woodlee*, two defendants were convicted of violent interference with enjoyment of a public facility based on race in violation of 18 U.S.C. § 245(b). Defendant Woodlee and two other men had yelled racial slurs and chased three African-American men from a bar. A car chase ensued and defendant Woodlee fired multiple shots into the victim's vehicle, killing one man and injuring the two other passengers.

---

[1] 18 U.S.C. § 245(b) (1976) states in pertinent part: "Whoever. . . by force or threat of force willfully injures, intimidates or interferes with , or attempts to injure, intimidate or interfere with . . . any person because of his race, color, or national origin and because he is or has been. . . participating in or enjoying any benefit. . . shall be imprisoned for any term of years or for life."
[2] At least three witnesses testified at trial that Franklin had expressed his hated toward African-Americans. One witness testified that Franklin asked staff working at a motel where Franklin stayed if any blacks had occupied or cleaned the room. Franklin told a lifeguard that he did not go to a specific park because there were "too many niggers" there. In addition, one woman testified that Franklin told her that he "hated to see white girls with niggers." After Franklin was arrested, Franklin told the interviewing agent that he considered himself to be a racist and even refused to eat a hamburger because the agent was unable to confirm that the hamburger was "not cooked by a nigger."

At trial, the government presented testimony that Woodlee had refused to attend a social gathering one week prior to the shooting because a woman of "mixed race" was going to attend. Defendant Woodlee objected and, over his objection, the District Court admitted the testimony. The defendant appealed his conviction, in part, based upon this ruling. On appeal, the Tenth Circuit held that admission of the testimony was proper. The Court of Appeals reasoned that because "the government was required to prove Mr. Woodlee acted because of the victims' 'race, color, religion or national origin . . . [and] [e]vidence of past racial animosity is relevant to establish this element of the offense. Accordingly, it falls squarely within the motive and intent purposes delineated in 404(b)." *United States v. Woodlee,* 136 F.3d 1399, 1410 (10th Cir. 1998).

IV. Argument

Here, the evidence of the defendant's conduct in Idaho Falls and in Nevada satisfies the *Cardinas Garcia* inquiry. The evidence is being offered for a proper purpose and it is relevant. Specifically, it is evidence of the defendant's motive and intent. It also rebuts any claim that the charged offense was simply a mistake. Finally, it is relevant evidence of an element of the charged offense. The probative value of this evidence, moreover, outweighs any potential prejudice and should therefore be admitted over any Rule 403 objection raised by the defendant. This evidence should be admissible pursuant to Rule 404(b) and current Tenth Circuit case law.

   *a. The extrinsic act evidence is being offered for proper purposes and is relevant.*

The extrinsic evidence helps establish the defendant's motive and intent to commit the charged offense. Specifically, the defendant will attack people who are African-

American or who associated with African Americans if these people express any opposition to him whatsoever.

In the Nevada incident, a woman who was African-American told Defendant the store was closed and that he needed to leave. In response, Defendant waited outside for her, called her racial slurs specifically directed toward African-Americans, and threw rocks at her. The Idaho Falls incident followed the same pattern. Defendant was told to leave the store. The person giving him the instruction was one whom Defendant identified as sympathetic to African culture. When the Idaho Falls victim asked Porter to leave, he responded, as he did in Nevada, with violence. When Defendant completed his attack, he told the victim, "Don't ever speak to a white man like that." Again, when confronted by an African American or a person who identified with African-American culture, Defendant responded by invoking race and engaging in violence.

In this case, the defendant was asked by a man who is part African-American, Waldvogel to stop using racial slurs in the presence of Waldvogel's seven year-old son, L.W. Defendant responded to this request by uttering more racial slurs and then engaging in assaultive conduct, specifically striking Waldvogel with a stun cane.

The similarity between the two extrinsic incidents and the instant offense is striking. In all three instances defendant was confronted by individuals whom he believed were African-American or who identified with African-Americans. When confronted by these individuals, defendant responded with racially-charged language violence. This extrinsic evidence establishes defendant's motive and intent during the charged offense.

In addition, the United States anticipates that defendant will claim he acted in self-defense. The fact that defendant had engaged in unprovoked attacks on two prior occasions is evidence that defendant's intent during the assault in the instant case was not to protect himself but rather to seek retribution against any African-American or African sympathizer who dared to confront him.

In addition, evidence of these two incidents is relevant evidence of an element of the charged offense. Here, as in *Woodlee* and in *Franklin*, the United States is required to prove that Porter was motivated by racial animus. The fact that defendant had twice previously assaulted individuals and used racial slurs specifically directed toward African-Americans is evidence that he has animus specifically toward African-Americans. According to the *Woodlee* Court, "[e]vidence of past racial animosity is relevant to establish this element of the offense," and is therefore admissible. *Id.* at. 1410.

    b. *The extrinsic act evidence is not unfairly prejudicial.*

Here, the 404(b) evidence does "not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged," therefore the Rule 403 balancing test "undeniably weighs in favor of admitting the evidence." *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir.1995). Evidence is unfairly prejudicial "if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v.* Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999) (internal quotations and citations omitted).

As noted above, the Idaho Falls and Nevada Incidents are very similar to the instant

offense. The facts of those incidents does not involve conduct any more sensational or disturbing than the crime defendant is charged with in this case. Therefore, this evidence is unlikely to cause the jury to come to a decision in this case based on an emotional response related to the prior conduct and should therefore be admitted over any 403 objection made by the defendant

## CONCLUSION

As set forth above, the United States intends to call no more than three witnesses to establish the facts of the Idaho Falls and Nevada incidents. The testimony of these witnesses is admissible pursuant to Rule 404(b) because it is evidence of the defendant's motive and intent. In addition, it is relevant to an element of the charged offense, specifically, that defendant was motivated by racial animus. For the foregoing reasons, the Court should rule the extrinsic evidence admissible at trial.

RESPECTFULLY SUBMITTED December 22, 2017.

                                            JOHN W. HUBER
                                            United States Attorney

                                            /s/ *J. Drew Yeates*
                                            J. DREW YEATES
                                            Assistant United States Attorney

                                            /s/ *Rose E. Gibson*
                                            ROSE E. GIBSON
                                            Trial Attorney, Department of Justice