JOHN W. HUBER, United States Attorney (#7226)
J. DREW YEATES, Assistant United States Attorney (#9811)
ROSE E. GIBSON, Department of Justice Trial Attorney
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:17-cr-00527 |
| Plaintiff, | : | SENTENCING MEMORANDUM |
| vs. | : | |
| MARK OLIC PORTER, | : | |
| Defendant. | : | Judge Dee Benson |

---

The United States, by and through the undersigned prosecutors, hereby submits its sentencing memorandum. The United States objects to the Guidelines Calculation provided by United States Probation. The United States asks this Court to impose a term of incarceration between 37 and 46 months; this is a guideline sentence that is sufficient but no more than necessary to serve the purposes set out within 18 U.S.C. § 3553(a). The United States intends to make further argument in support of this recommendation at the sentencing hearing currently scheduled for May 24, 2018.

I.     PRE-SENTENCE INVESTIGATION REPORT

The United States objects to the Guidelines Calculation within the Pre-Sentence Investigation Report (PSR). (Doc. 92, p. 17). The United States provided written objections to the Guidelines Calculation on May 8, 2018. Probation declined to amend the PSR and filed the final PSR on May 15, 2018. (Doc. 92).

There are three distinct issues the United States respectfully asks this Court to consider as it calculates the defendant's sentencing guidelines. First, the correct cross reference is aggravated assault because the evidence at trial established that the defendant used a dangerous weapon and intended to cause bodily injury; as a result, the defendant's Base Offense Level should be a 14. USSG § 2A2.2. Second, and in the alternative, if this Court determines that assault is the applicable cross reference, the Court should follow USSG § 2H1.1's instruction to apply the "greatest" Base Offense Level and use 10 as the defendant's Base Offense Level. USSG § 2H1.1(a)(3)(A). Third, the Court should follow USSG 3A1.1(a) and apply the 3-level enhancement because, as the evidenced established at trial, the defendant's crime was motivated by the race of the victim.

A.  <u>Aggravated Assault is the applicable cross reference</u>

When there is a dispute as to a fact relevant to sentencing, the United States need only prove that fact by a preponderance. *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005). There is sufficient evidence in the record for this Court to find that the applicable crime of conviction is aggravated assault. "Aggravated assault" means, inter alia, "a felonious assault that involved… a dangerous weapon with intent to cause bodily injury (i.e. not merely to frighten) with that weapon." USSG §2A2.2, Application Note 1. The aggravated assault cross reference is

2

appropriate even where the defendant intended to cause bodily injury with a dangerous weapon, but failed to inflict an injury. In *United States v. Antone,* the Tenth Circuit Court of Appeals upheld the District Court's application of USSG § 2A2.2 in a case where the defendant threw a chair at his victim but missed. There, the Court of Appeals reasoned that the defendant intended to cause bodily harm. *United States v. Antone*, 461 Fed. Appx. 815 (10th Cir. 2012).

Here, the defendant's conduct constituted aggravated assault because it involved "a dangerous weapon with intent to cause bodily injury (i.e. not merely to frighten) with that weapon." USSG § 2A2.2, Note 1. As noted by the PSR (Doc. 92, Addendum at p.1), the jury found beyond a reasonable doubt that the defendant used a dangerous weapon when he discharged a stun cane on the neck of the victim. (Jury Verdict Doc. 88).

The case law also supports finding that the stun cane is a dangerous weapon. Tasers are dangerous weapons. *See e.g. United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015), explaining that "a Taser—even in drive-stun mode—is a dangerous weapon."). Further, walking sticks and pieces of firewood are considered dangerous weapons. *United States v. Tissnolthotos,* 115 F.3d 759, 763 (10th Cir. 1997) (holding a piece of firewood was a dangerous weapon) *citing United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir 1994) ("Courts have found that, in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks."); *United States v. Nowlin*. 555 F. App'x 820 822, 826 (10th Cir. 2014) (unpublished) (affirming a conviction of assault with a dangerous weapon when the defendant hit victims in the head with a stick). Given this case law and the jury's finding, the defendant's stun cane should be considered a dangerous weapon for purposes of USSG § 2A2.2, Note 1.

Second, the evidence in the record supports a finding that the defendant intended to cause bodily injury. Two witnesses, Kaitlyn Adair and Michael Waldvogel, testified that the defendant purposefully struck the victim with the stun cane—a dangerous weapon. In addition, although the jury did not find beyond a reasonable doubt that the defendant caused bodily injury, this Court may properly conclude that the defendant *intended* to cause bodily injury based upon the evidence that the defendant purposefully hit the victim in the neck with a dangerous weapon.

In *Antone*, the defendant threw a chair at his victim but missed. There, the Court of Appeals concluded that the defendant intended to cause bodily injury and upheld the District Court's application of USSG § 2A2.2. *Antone* at 818. Here, the defendant was successful, he did in fact strike the victim with the stun cane. Based on the evidence at trial and the jury's verdict, this Court should conclude that the defendant intended to cause bodily injury.

There is sufficient evidence for this Court to find by a preponderance that the defendant both used a dangerous weapon and intended to cause bodily injury. As a result, this Court should apply the Base Offense Level of 14.

In addition, pursuant to USSG §2A2.2(b)(2)(B), the Court should increase the Base Offense Level by 4 levels because the defendant used a dangerous weapon. USSG § 2A2.2(b)(2)(B). Section 2A2.2(b)(2)(B), Note 3, explains that "In a case involving the use of a dangerous weapon with intent to cause bodily injury, the court shall apply both the base offense level and subsection (b)(2)." *Id.* The Court should enhance the Offense Level by 4, and apply the Adjusted Base Offense Level of 18.

B. <u>The defendant's minimum Base Offense Level is 10</u>

Even though the PSR declined to apply the cross-reference for Aggravated Assault, the

Base Offense Level should have been a 10. In a case involving individual rights, where the defendant uses or threatens force, the minimum Base Offense Level is 10. USSG § 2H1.1(a)(3)(A). USSG § 2H1.1 provides direction on how to calculate the Base Offense Level in Offenses Involving Individual Rights. Section 2H1.1, in pertinent part, reads as follows: "(a) Base Offense Level (Apply the Greatest): (1) the offense level from the guideline applicable to any underlying offense…" or ". . . (3) **10**, if the offense involved (A) the use or threat of force against a person…" USSG § 2H1.1 (*emphasis in the original*).

Here, if this Court finds that the applicable cross reference is Assault (USSG § 2A2.3), this Court should apply Section 2H1.1(a)(3)(A) because the defendant used or threatened force against a person. The jury found the defendant guilty beyond a reasonable doubt of "using force or the threat of force to willfully injure, intimidate or interfere with Michael Waldvogel." (*See* Court's Jury Instruction No. 17 at Doc. 89; Jury Verdict at Doc. 88). This Court should conclude, as the jury did, that the defendant used or threatened force against a person when he intentionally struck the victim in the neck with the stun cane.

The appropriate Base Offense Level under Section 2H1.1(a)(3)(A) is at least a 10. The PSR erred when it found that the Base Offense Level is a 7. A Base Offense Level 7 is not the applicable Base Offense Level because Section 2H1.1(a) explains that the Base Offense Level should be the "greatest" of the "offense guideline applicable to any underlying offense" or "**10**, if the offense involved (A) the use or threatened use of force against a person…" USSG § 2H1.1(a). The minimum applicable Base Offense Level is 10.

C. <u>The defendant earned a 3-level enhancement when he selected the victim because of his race</u>

5

Probation initially correctly applied USSG §3A1.1(a) and increased the offense level by 3 levels. However, in the final version of the PSR, probation declined to apply this enhancement. Application of USSG §3A1.1(a) is appropriate in this case because the defendant selected this victim because of his race. The jury found the defendant guilty of a racially motivated crime. In order to find the defendant guilty of this crime, the jury had to conclude beyond a reasonable doubt that "the defendant acted because Mike Waldvogel was occupying a dwelling and because of Mike Waldvogel's race. . ." (*See* the Court's Jury Instructions at Doc. 89, Instruction 17; Jury Verdict at Doc. 88). This court may similarly conclude, based upon the record, that this defendant's crime was based upon the victim's race. The evidence adduced at trial proved the defendant's racial hatred motivated his crime. Accordingly, the Court should increase the offense level by 3 levels pursuant to USSG §3A1.1(a).

The defendant's sentencing guideline range is 37 to 46 months. This is based upon the following calculation:

| | | |
|---|---|---|
| Base offense level | (USSG § 2H1.1) | 14 |
| Use of a Dangerous Weapon | (USSG § 2A2.2(b)(2) | 4 |
| Hate Crime Motivation | (USSG § 3A1.1) | 3 |
| Total offense level | | 21 |

## II.     RECOMMENDATION

The United States recommends that this Court sentence the defendant a term of incarceration within the guidelines. The United States believes that under the circumstances this recommendation is sufficient but not more than necessary to serve the goals set forth in Section

3553(a).

A guideline sentence in this case will "reflect the seriousness of the offense." 18 U.S.C § 3553(a)(2)(A). The defendant attacked his unarmed neighbor with a dangerous weapon in the presence of the victim's small child. The defendant yelled racial slurs at the victim and at his small child. While the victim's injury was relatively minor, the impact of the defendant's verbal and physical attack was severe. As a result of the defendant's conduct, the victim was unable to continue using his home as he had prior to the attack. His child refused to sleep in his own bed, would not go outside to play, and continues to experiences fear related to this incident. As a result of the defendant's conduct, the victim left his home. A guideline sentence is appropriate given the seriousness of the offense.

A guideline sentence will "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). This defendant has engaged in a life of crime. The PSR notes twenty adult convictions. (Doc. 92, p. 6-12). Most recently, in 2015, this defendant attacked a young woman in a convenience store. After being charged with assault, he fled the jurisdiction, and escaped prosecution. (Doc. 92, p.12).

Despite his record, this defendant has never served a significant prison sentence. In fact, according to the PSR, his longest period of incarceration was 6 months back in 1994. (Doc. 92, p. 10). Since that time, the defendant has been convicted of 15 additional crimes. Plainly, a 6-month prison sentence was not sufficient to deter this defendant from engaging in criminal conduct. A significant prison sentence is, in this case, necessary to deter the defendant from further criminal conduct and to protect the community from this defendant.

Finally, the imposition of a guidelines sentence will "afford adequate deterrence," and

7

promote respect for the law." 18 U.S.C §§3553(a)(2)(B), (a)(2)(A). This defendant has demonstrated that he believes he can commit a hate crime and escape punishment. Just days after the jury found the defendant guilty, the defendant said in a recorded phone call, "…I think I might be getting out because the Judge seemed like he understood me . . . he laughed about it, and he was mad when he saw that I had a guilty." (Government's Sentencing Exhibit #1). This is evidence that the defendant believes his conduct was not only acceptable, but condoned by the Court. A guideline sentence is necessary to promote respect for the law by sending a clear message to this defendant that the Court does not condone the defendant's commission of a hate crime.

## **CONCLUSION**

The Court should sentence the defendant to term of incarceration between 37 and 46 months—a guidelines sentence. This guideline sentence is sufficient but not more than necessary to reflect the seriousness of the offense, protect the community, deter future criminal conduct, and promote respect for the law.

RESPECTFULLY SUBMITTED May 21, 2018.

JOHN W. HUBER
United States Attorney

/s/ *J. Drew Yeates*
J. DREW YEATES
Assistant United States Attorney

/s/ *Rose E. Gibson*
ROSE E. GIBSON
Trial Attorney
United States Department of Justice

8